**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CRAIG HOSKING,** | : | **CIVIL ACTION** |
| *Plaintiff*, | : | |
| | : | |
| **v.** | : | **No. 26-cv-00380** |
| | : | |
| **HERITAGE PROPERTY MANAGEMENT,** | : | |
| **LLC,** | : | |
| *Defendant.* | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                        **APRIL 6, 2026**

In Count I of the Complaint, Plaintiff asserted a cause of action for interference and retaliation under the Family and Medical Leave Act ("FMLA"). *See* ECF No. 1 ¶¶ 40–47. Defendant moved to dismiss only Plaintiff's FMLA interference claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Defendant's Motion"). *See* ECF No. 10. For the reasons set forth below, the Court will **DENY** Defendant's Motion (ECF No. 10).

## I.    **BACKGROUND**

The Court draws the following allegations from Plaintiff's Complaint and assumes them to be true at the motion-to-dismiss stage. *See City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). Plaintiff Craig Hosking began working for Defendant Heritage Property Management, LLC as a Lead Maintenance Technician on February 16, 2023. ECF No. 1 ¶ 18. Plaintiff "performed his job well" and received both a positive performance review and a raise in December 2023. *Id.* ¶¶ 19–20.

In late January 2024, Plaintiff's father was diagnosed with esophageal cancer, and he advised his team of this news on January 29, 2024. *Id.* ¶ 21. On January 31, 2024, Plaintiff emailed Lisa Phy-DeBellis, Defendant's Human Resources Manager, requesting FMLA paperwork

because he anticipated that his father would need his help "in the coming weeks" due to his cancer diagnosis. *Id.* ¶ 22. Plaintiff also called the front office and made the same request after receiving an out-of-office message from Ms. Phy-DeBellis. *Id.* ¶ 23. Plaintiff had a conversation with Melissa Montero, Defendant's Assistant Property Manager, "who relayed Plaintiff's message to Defendant's President, Lydia Aleixo, . . . and advised they would get the paperwork together for Plaintiff." *Id.* ¶ 24.

On February 1, 2024, while Plaintiff was at work, he learned that his "father was officially diagnosed with Stage 3 cancer." *Id.* ¶¶ 25–26. He had a panic attack and asked if he could leave work early to visit a doctor regarding his mental health. *Id.* ¶¶ 26–27. At his doctor's appointment, Plaintiff's doctor determined that he "was suffering from anxiety and recommended" that he seek out "psychiatric counselling with a therapist." *Id.* ¶ 28. After the appointment, Plaintiff asked Defendant if he could take additional days off from work due to his mental health symptoms, and Defendant "ostensibly approved this request." *Id.* ¶ 29.

On February 2, 2024, Ms. Montero called Plaintiff and told him that he "had not been working for Defendant long enough to qualify for FMLA leave." *Id.* ¶ 30. A few days later, on February 6, 2024, Plaintiff returned to work, where Ron Washington, Plaintiff's supervisor, pulled him aside and told him that "Defendant was terminating his employment." *Id.* ¶¶ 32–33. Mr. Washington also told Plaintiff that "Defendant would not be able to work with Plaintiff given what he had coming up," which Plaintiff understood as a reference to his "need to care for his father and his own mental health." *Id.* ¶¶ 34–35. Plaintiff would have had his one-year work anniversary on February 16, 2024. *Id.* ¶ 31.

After Plaintiff was terminated, on July 24, 2024, he filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed

with the Pennsylvania Human Relations Commission.  *Id.* ¶ 7.  On December 18, 2025, he received a Notice of Right to Sue from the EEOC regarding his Charge.  *Id.* ¶ 9.

On January 21, 2026, Plaintiff initiated the present action by filing a Complaint raising three causes of action for (1) FMLA interference and retaliation (Count I); (2) discrimination, retaliation, and failure to accommodate pursuant to the Americans with Disabilities Act (Count II); and (3) discrimination, retaliation, and failure to accommodate in connection with a disability/handicap pursuant to the Pennsylvania Human Relations Act (Count III).  *Id.* ¶¶ 40–63.  Defendant filed a Partial Motion to Dismiss Plaintiff's Claim for FMLA Interference on April 1, 2026.  *See* ECF No. 10.  Defendant's Motion is before the Court.

## II.   <u>LEGAL STANDARD</u>

When evaluating a motion to dismiss for failure to state a claim, the Court must "accept all factual allegations as true, [and] construe the complaint in the light most favorable to the plaintiff." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (internal quotations and citation omitted).  In addition, the Court "draw[s] all reasonable inferences" from the allegations in the plaintiff's favor.  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).  To survive a Rule 12(b)(6) motion, a plaintiff's well-pleaded complaint must state a "plausible entitlement to relief," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 559 (2007).  A plaintiff is not required to plead "detailed factual allegations," but Federal Rule of Civil Procedure 8(a)(2) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

3

### III.  **DISCUSSION**

Defendant moved to dismiss Plaintiff's FMLA interference claim.  *See* ECF No. 10.  To state a claim for FMLA interference, an employee must demonstrate that

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014) (citation omitted).  The Third Circuit has explained that "the first four elements of this longer test largely collapse into the first element of the *Callison* formulation because in order to be entitled to benefits, an employee must be eligible for FMLA protections and leave, work for a covered employer, and provide sufficient notice." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 252 n.2 (3d Cir. 2014).  Therefore, in other words, an employee raising an FMLA interference claim must allege that "he was entitled to benefits under the FMLA and that he was denied them." *Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005).

For an employee to be eligible to take FMLA leave, the relevant statutory provision requires the employee (1) to have been employed for a minimum of 12 months, and (2) to have worked at least 1,250 hours for that employer during the preceding 12-month period.  *See* 29 U.S.C. § 2611(2)(A)(i)–(ii).  Eligibility determinations are made "at the commencement of the first instance of leave for each FMLA-qualifying reason in the applicable 12-month period."  29 C.F.R. § 825.300(b)(1).  Multiple courts have held that an employee can state an interference claim "when the employee was not eligible for FMLA leave at the time of the request," as long as the employee "would have gained eligibility by the time such leave was to begin."  *O'Brien v. Lehigh Valley Health Network, Inc.*, No. 18-cv-3119, 2019 WL 2642000, at *3 (E.D. Pa. June 27, 2019) (citing

4

*Beffert v. Pa. Dep't of Pub. Welfare*, No. 05-cv-43, 2005 WL 906362, at *2–3 (E.D. Pa. Apr. 18, 2005)); *see also Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269, 1275 (11th Cir. 2012) ("[B]ecause the statute contemplates notice of leave in advance of becoming eligible, . . . the FMLA regulatory scheme must necessarily protect pre-eligible employees . . . who put their employers on notice of a post-eligibility leave request."); *Sine v. Rockhill Mennonite Home*, 275 F. Supp. 3d 538, 542–43 (E.D. Pa. 2017) (same) (collecting cases); *cf. Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508 (3d Cir. 2009) ("[I]t would be patently absurd if an employer who wished to punish an employee for taking FMLA leave could avoid liability simply by firing the employee before the leave begins.").

In its Partial Motion to Dismiss, Defendant argues that Plaintiff failed to state a claim for FMLA interference for three reasons, none of which are persuasive. *See* ECF No. 10 at 6–7.

First, the Court rejects Defendant's argument that Plaintiff's FMLA interference claim should fail on the basis that Plaintiff "had been employed by Defendant for less than 12 months." *Id.* at 7. While Plaintiff was not employed by Defendant for at least 12 months at the time that he made his initial request for FMLA leave on January 31, 2024, he "was set to become FMLA-eligible two (2) weeks later on or about February 16, 2024." ECF No. 1 ¶¶ 22, 31; *see also id.* ¶¶ 18, 42. Moreover, Plaintiff alleged that he planned to take "FMLA leave 'in the coming weeks', i.e., after he became eligible." *Id.* ¶ 43; *see also id.* ¶ 22. Therefore, Plaintiff's "request for leave falls within the pre-eligibility protection window" because Plaintiff "sufficiently alleged prospective eligibility." *O'Brien*, 2019 WL 2642000, at *4; *see also Sine*, 275 F. Supp. 3d at 543–44 (finding that a plaintiff's allegation that she put defendant on notice that her surgery would "take place after her one-year [work] anniversary" allowed the court to reasonably conclude that she was making a protected pre-eligibility request for FMLA leave (emphasis omitted)).

5

Second, Defendant argues that Plaintiff did not specifically allege that he worked at least 1,250 hours for Defendant in the preceding 12-month period. *See* ECF No. 10 at 6–7. Construing all factual allegations in Plaintiff's favor—as the Court is required to do at this stage—Plaintiff's allegation that he "was set to become FMLA-eligible" on February 16, 2024 allows the Court to reasonably infer that Plaintiff had worked the requisite amount of hours for Defendant in the prior 12-month period, such that he would soon be eligible for FMLA leave. ECF No. 1 ¶ 31; *see also id.* ¶ 42. In addition, Plaintiff alleged that he was told by Melissa Montero, Defendant's Assistant Property Manager, that he "had not been working for Defendant long enough to qualify for FMLA leave." *Id.* ¶ 30. At the pleading stage, this factual allegation further permits the reasonable inference that Plaintiff had worked the requisite amount of hours and the only issue with respect to his FMLA eligibility in Defendant's eyes was whether he had met the 12-month period requirement. Therefore, Plaintiff sufficiently alleged that he was an "eligible employee" and was entitled to FMLA leave after February 16, 2024.

Third, Defendant contends that Plaintiff did not specifically allege that Defendant employs 50 or more employees. *See* ECF No. 10 at 6–7. Plaintiff's allegations that Defendant initially "advised they would get the [FMLA] paperwork together for Plaintiff," and that he was told by Defendant that he "had not been working for Defendant long enough to qualify for FMLA leave" allow the Court to draw the reasonable inference that Defendant is a qualifying employer subject to the FMLA, notwithstanding Plaintiff's failure to allege the amount of employees that Defendant employs. ECF No. 1 ¶¶ 24, 30; *see also id.* ¶ 41 (alleging that "Defendant is an employer within the meaning of the FMLA").

As to the other elements of an FMLA interference claim, Plaintiff alleged that he provided Defendant with notice that he intended to take FMLA leave, and that Defendant denied him the

benefits to which he was entitled when it terminated Plaintiff before his FMLA leave was set to begin. *See id.* ¶¶ 22–24, 33–34, 38, 41–47; *see also Erdman*, 582 F.3d at 509 ("[F]iring an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee."); *Pereda*, 666 F.3d at 1275 ("[A] pre-eligible employee has a cause of action if an employer terminates her in order to avoid having to accommodate that employee with rightful FMLA leave rights once that employee becomes eligible."); *O'Brien*, 2019 WL 2642000, at *4–5 (denying a motion to dismiss an FMLA interference claim in connection with an employee's "request for FMLA leave to begin when she became eligible").

Accordingly, Plaintiff adequately alleged the necessary elements of an FMLA interference claim, so the Court will deny Defendant's Motion (ECF No. 10).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion (ECF No. 10) is denied.  An appropriate Order will follow.

BY THE COURT:

/s/ Chad F. Kenney

_____

**CHAD F. KENNEY, JUDGE**